UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **MICHAEL BUJALSKI, et al.,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| v. } | **Case No.: 7:13-cv-01446-MHH** |
| } | |
| **KOZY'S RESTAURANT, INC., et al.,** } | |
| } | |
| **Defendants.** } | |

## **MEMORANDUM OPINION AND ORDER**

In this action, seven plaintiffs assert claims against four defendants under the Fair Labor Standards Act (FLSA) and a number of state law theories. The plaintiffs, who worked as bartenders, waiters, cooks, or hostesses at a now-closed restaurant in Tuscaloosa, Alabama, contend that the defendants did not adequately compensate them for their work at the restaurant. Pursuant to Federal Rule of Civil Procedure 56, defendant Phillip Kinard asks the Court to enter judgment in his favor on the plaintiffs' claims. (Doc. 43). For the reasons stated below, the Court grants in part and denies in part Mr. Kinard's motion for summary judgment.

### I.      SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law." FED. R. CIV. P. 56(a).  To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A).  "The court need consider only the cited materials, but it may consider other materials in the record."  FED. R. CIV. P. 56(c)(3).  When considering a summary judgment motion, the Court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences in favor of the non-moving party.  *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

In 2007, Mr. Kinard loaned defendant Michael Allen $197,724 so that Mr. Allen could purchase Kozy's Restaurant.  (Doc. 43-1, pp. 1–2).[1]  As security for the loan, Mr. Allen granted Mr. Kinard a mortgage on several pieces of real property, including the building in which Kozy's operated and the underlying land.  (Doc. 43-1, p. 2; Doc. 43-3, pp. 59–68).  The terms of the loan required Mr. Allen

---

[1] Mr. Allen's father, with whom Mr. Kinard is "best friends," asked Mr. Kinard to make the loan. (Doc. 51-1, pp. 9, 11).

to make monthly interest payments to Mr. Kinard at an annual rate of 9 percent. (Doc. 43-3, p. 69).

Over the next few years, Mr. Kinard frequently ate dinner at Kozy's. (Doc. 51-1, p. 12; Doc. 51-3, p. 12). According to plaintiff Carrie Johnson-Moore, Mr. Kinard was one of the restaurant's "regulars" and "was there all the time." (Doc. 51-3, pp. 11–12). On several occasions, Mr. Kinard, an experienced homebuilder, provided repair and construction services for the restaurant. (Doc. 43-1, p. 3; Doc. 51-1, p. 15). Mr. Kinard received no monetary payment for these services. (Doc. 45, p. 2). Instead, Kozy's provided Mr. Kinard's meals free of charge. (Doc. 45, pp. 2–3; Doc. 51-1, p. 15). Mr. Kinard testified that he kept no records related to this "barter system." (Doc. 51-1, pp. 17, 19).

In June of 2012, Mr. Kinard made a second loan to Mr. Allen, who was having difficulty paying his taxes. (Doc. 43-1, p. 3).[2] In connection with this loan, Mr. Allen executed a "Bill of Sale," which purports to "transfer all tangible and intangible assets of Kozy's Restaurant and/or Kozy's Incorporated including but not limited to all rights, privileges and use of the name Kozy's to Phillip Kinard." (Doc. 45-1, p. 2). Mr. Kinard testified that he viewed the transfer of assets as security for the second loan and that his aim in entering into the transaction was to obtain "collateral" for the loan. (Doc. 51-1, pp. 21–22). According to Mr. Kinard,

---

[2] Mr. Kinard testified that the second loan was for an amount less than $10,000. (Doc. 51-1, pp. 21, 28).

he and Mr. Allen executed the Bill of Sale with the understanding that Mr. Kinard would transfer Kozy's assets back to Mr. Allen when Mr. Allen repaid the second loan. (Doc. 43-1, p. 3). Mr. Kinard disputes that he became the owner of Kozy's by virtue of the Bill of Sale. (Doc. 51-1, p. 22).

Toward the end of 2012, Mr. Allen stopped making regular monthly payments to Mr. Kinard. (Doc. 43-1, p. 3; Doc. 51-1, p. 20). In April of 2013, Ms. Johnson-Moore informed Mr. Kinard that Mr. Allen had likewise stopped issuing regular paychecks to her and the other plaintiffs. (Doc. 51-2, p. 30; Doc. 51-3, p. 28; Doc. 51-7, p. 19). Mr. Kinard gave the plaintiffs his personal cell phone number and told them to contact him if they continued to experience problems with their pay. (Doc. 51-3, p. 28; Doc. 51-7, p. 19).

At least one plaintiff, Tyler Lovell, subsequently communicated with Mr. Kinard via text message regarding compensation. (Doc. 51-2, p. 26). In addition, Mr. Kinard met with the plaintiffs on at least two occasions between April and June of 2013. (Doc. 51-3, pp. 31–32; Doc. 51-6, p. 12). At these meetings, Mr. Kinard and the plaintiffs discussed Mr. Kinard's mortgage and impending foreclosure, the restaurant's sales, and the plaintiffs' unpaid wages. (Doc. 51-3, pp. 29, 31; Doc. 51-6, p. 12). According to the plaintiffs, Mr. Kinard told them that "Michael [Allen] is out," that he was "in charge," and that he would "take care of" their outstanding paychecks. (Doc. 51-3, pp. 25, 31 43; Doc. 51-5, p. 14; Doc.

4

51-6, p. 12).  Mr. Kinard testified that he "contacted [Mr. Allen] more than once and said, You need to pay the employees."  (Doc. 51-1, p. 33)

Ms. Johnson-Moore testified that, in April and May of 2013, she "talked to [Mr. Kinard] regularly" about the general management of the restaurant.  (*See* Doc. 51-3, p. 32; *see also* Doc. 51-3, pp. 27–28; Doc. 51-1, p. 35).  According to Ms. Johnson-Moore, Mr. Kinard "started coming in more and more frequently, checking on [the plaintiffs]."  (Doc. 51-3, p. 27).  Ms. Johnson-Moore testified that, "[e]very time" Mr. Kinard visited the restaurant, he asked if Mr. Allen had been "showing up" and for information regarding "the numbers of guests."  (Doc. 51-3, pp. 27–28).  On June 6, 2013, Mr. Kinard foreclosed on his mortgage, and Kozy's closed for business.  (Doc. 43-1, p. 6; Doc. 51-1, p. 30).

On August 5, 2013, the plaintiffs, Michael Bujalski, Tyler Lovell, Carrie Johnson-Moore, Bryant K. Davis, Courtland Hendricks, Rebecca Doss, and Charles Parker Hall, filed this lawsuit against defendants Kozy's Restaurant, Inc., Michael Allen, Claudia Allen, and Phillip Kinard.  (Doc. 1).  In their amended complaint, the plaintiffs assert fourteen claims against the defendants under the FLSA and Alabama law.  (Doc. 6, pp. 6–16).  In a previous order, the Court dismissed the plaintiffs' claims for outrage, conversion, and respondeat superior.  (Doc. 29).  Mr. Kinard now moves for summary judgment on the plaintiffs' remaining claims.  (Doc. 43).

5

## III.   DISCUSSION

As an initial matter, the plaintiffs concede that Mr. Kinard is entitled to judgment as a matter of law on their claims for fraudulent misrepresentation, fraudulent suppression, civil conspiracy, and avoidance of transfer.  (Doc. 45, p. 9). Accordingly, the Court will grant Mr. Kinard's motion for summary judgment with respect to those claims.

The plaintiffs assert their remaining claims under the FLSA and under Alabama law.  The Court examines the plaintiffs' claims in turn.

### 1.   FLSA claim: failure to pay minimum wage

The plaintiffs allege that Mr. Kinard violated the FLSA by failing to adequately compensate them for work they performed for Kozy's in March, April, May, and June of 2013.  (Doc. 6, pp. 5–6).  The FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce . . . $7.25 an hour," beginning in July of 2009.  *See* 29 U.S.C. § 206(a).[3]  Mr. Kinard does not dispute that the plaintiffs were, at the relevant times, employees engaged in commerce for purposes of the FLSA.  Rather, Mr. Kinard argues that he is

---

[3] With respect to employees who receive more than $30 per month in tips—so-called "tipped employees"—the FLSA permits employers to apply a tip credit of up to $5.12 per hour when calculating the employees' wages.  29 U.S.C. § 203(t); *Stubbia v. Nopi Enterprises, Inc.*, 2012 WL 3687491, at *2 (S.D. Fla. Aug. 27, 2012).  Thus, an employer may pay a tipped employee $2.13 per hour without violating the FLSA.

entitled to judgment as a matter of law on the plaintiffs' FLSA claim because he was not the plaintiffs' "employer" within the meaning of the statute. (Doc. 43-1, p. 8).

The FLSA applies only to employer-employee relationships. *See* 29 U.S.C. § 206(a); *Villareal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997). An "employer" under the FLSA is "any person acting directly or indirectly in the interest of an employer in relation to an employee. . . ." 29 U.S.C. § 203(d). Whether an individual fits this definition "does not depend on technical or isolated factors but rather on the circumstances of the whole activity." *See Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1310 (11th Cir. 2013) (quoting *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008)) (internal quotation marks omitted).

In the Eleventh Circuit, the key inquiry is whether the alleged employer had "operational control of significant aspects of [the company's] day-to-day functions, including compensation of employees or other matters in relation to an employee." *Alvarez*, 515 F.3d at 1160 (quoting *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986)) (internal quotation marks omitted). An individual is not subject to personal liability as an FLSA employer simply by virtue of his position as a corporate officer or owner. *Alvarez*, 515 F.3d at 1155, 1160–61; *Patel*, 803 F.2d at 637–38. To be liable under the FLSA, one must also "be involved in the [company's] day-

to-day operation or have some direct responsibility for the supervision of the employee[(s)]." *Alvarez*, 515 F.3d at 1160 (quoting *Patel*, 803 F.2d at 638) (internal quotation marks omitted).

To determine the extent of an alleged employer's involvement in a company's day-to-day operations, the Eleventh Circuit asks, in part, "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Villareal*, 113 F.3d at 205; *see also Rodriguez v. Jones Boat Yard, Inc.*, 435 Fed. Appx. 885, 888 (11th Cir. 2011). However, as noted above, these factors are only part of a broader analysis; they are not dispositive. *See, e.g.*, *Lamonica*, 711 F.3d at 1310. Having considered, in the light most favorable to the plaintiffs, the evidence of the whole of Mr. Kinard's relationship with the plaintiffs and with Kozy's, the Court finds that there are genuine disputes of material fact regarding whether Mr. Kinard was the plaintiffs' employer within the meaning of the FLSA.

It is undisputed that Mr. Kinard was not a director, officer, employee, or stockholder of Kozy's, but the record contains evidence that he was the corporation's owner during the alleged period of nonpayment. (*See* Doc. 43-1, p. 2; Doc. 45, p. 2; Doc. 48, p. 1; Doc. 45-1, p. 2). Mr. Kinard testified that he viewed the June 19, 2012 Bill of Sale, pursuant to which Mr. Allen transferred "all

tangible and intangible assets of Kozy's Restaurant and/or Kozy's Incorporated" to Mr. Kinard, as a security agreement. (Doc. 45-1, p. 2; Doc. 51-1, pp. 21–22). The document's plain language, however, indicates that the transaction was a sale. (*See* Doc. 45-1, p. 2). At a minimum, questions of fact exist regarding whether Mr. Kinard became the owner of Kozy's by virtue of the transaction. As the owner of Kozy's, Mr. Kinard would have had the power to hire and fire the restaurant's employees, a factor that weighs in favor of a determination that he was an FLSA employer. *See Rodriguez*, 435 Fed. Appx. at 888.

Mr. Kinard told the plaintiffs that he could not "legally take over" Kozy's until he foreclosed on his mortgage.[4] (Doc. 51-1, pp. 33–34; Doc. 51-3, p. 35). However, viewing the evidence in the light most favorable to the plaintiffs, in the months leading up to the foreclosure, Mr. Kinard became increasingly involved in Kozy's operations, particularly as the operations concerned the plaintiffs' compensation. (*See, e.g.*, Doc. 51-3, pp. 28–29; Doc. 51-1, p. 33). Mr. Kinard held at least two meetings with the plaintiffs to discuss his relationship with Kozy's and the plaintiffs' pay. (Doc. 51-3, pp. 31–32, Doc. 51-6, p. 12). Ms. Johnson-Moore testified that, at one of the meetings, Mr. Kinard assured the plaintiffs that he was "taking care of things now." (Doc. 51-3, p. 31). Other

---

[4] Mr. Kinard's apparent belief that he needed to own the real property at which Kozy's operated to legally control the business is mistaken. (*See* Doc. 51-1, pp. 33–34; Doc. 51-3, p. 35). Ownership of a business's underlying real property is legally distinct from ownership or control of the business.

plaintiffs recall leaving the meetings with the impression that Mr. Kinard had assumed responsibility for their compensation. (*See* Doc. 51-5, p. 14; Doc. 51-6, p. 12; Doc. 51-7, p. 17). In addition, Mr. Kinard gave his cell phone number to Ms. Johnson-Moore and told her to share his number with the other plaintiffs. (Doc. 51-1, p. 33; Doc. 51-2, p. 26; Doc. 51-3, p. 28; Doc. 51-7, p. 19). According to Ms. Johnson-Moore, Mr. Kinard stated: "give out my number, make sure everyone has it, text [the unpaid] amount to me and I will pay them." (Doc. 51-3, p. 28; *see also* Doc. 51-5, p. 18; Doc. 51-1, p. 33).[5]

Mr. Kinard began visiting Kozy's more frequently in the months before the foreclosure "to check on stuff." (Doc. 51-3, p. 29). Ms. Johnson-Moore testified that she had "numerous" in-person conversations with Mr. Kinard regarding problems at the restaurant, including the plaintiffs' outstanding pay. (Doc. 51-3, p. 29). Sometimes, according to Ms. Johnson-Moore, Mr. Kinard "may not eat, but he would pop in and see what was going on." (Doc. 51-3, p. 29). The record suggests that, between April and June of 2013, Mr. Kinard was present at the

---

[5] Mr. Kinard disputes that he promised to pay the plaintiffs. (Doc. 43-1, ¶ 33). To support his position, Mr. Kinard cites portions of the plaintiffs' depositions in which the plaintiffs testified that Mr. Kinard did not enter into a written agreement to pay the plaintiffs or promise to pay the plaintiffs "personally" or "out of his pocket." (Doc. 43-1, ¶ 33; Doc. 51-3, pp. 33, 43; Doc. 51-6, p. 14; Doc. 51-7, pp. 17–18). The Court does not agree with Mr. Kinard that this testimony constitutes undisputed evidence that Mr. Kinard never promised to pay the plaintiffs. (*See* Doc. 43-1, ¶ 33). Rather, the testimony tends to show only that Mr. Kinard did not promise in writing to pay the plaintiffs or promise to pay the plaintiffs with his personal funds; the testimony does not diminish the evidence relating to the assurances that Mr. Kinard provided. Moreover, the testimony on which Mr. Kinard relies raises questions of material fact regarding the nature and degree of Mr. Kinard's involvement with the plaintiffs' compensation.

restaurant more often than Mr. Allen. (*See* Doc. 51-1, p. 32; Doc. 51-2, p. 20; Doc. 51-3, pp. 21, 29, 36).

In Mr. Allen's absence, Mr. Kinard was "involved in [Kozy's] day-to-day operation." *Alvarez*, 515 F.3d at 1160 (quoting *Patel*, 803 F.2d at 638) (internal quotation marks omitted). At Mr. Kinard's request, Ms. Johnson-Moore sent nightly text messages to Mr. Kinard regarding the number of customers the restaurant had seated and the restaurant's earnings. (Doc. 51-3, pp. 27–28, 35). Ms. Johnson-Moore testified that Mr. Kinard sent her to meetings with potential investors and asked her if she would consider managing the restaurant. (Doc. 51-3, p. 28). Because it was "pretty clear" that Mr. Allen was not going to "step up to the plate," Ms. Johnson-Moore turned to Mr. Kinard when the restaurant "needed products." (Doc. 51-3, p. 27). Mr. Lovell testified that Mr. Kinard "coached" him regarding an incident in which Mr. Lovell left Mr. Kinard's table unattended for twenty minutes. (Doc. 51-2, p. 25). Mr. Lovell specifically distinguished Mr. Kinard's "coaching" from the average customer's complaining. (Doc. 51-2, p. 25).

Mr. Kinard may be, as he suggests, a "good Samaritan." (Doc. 51-1, p. 6; *see generally* Doc. 43-1). But he was also the owner of all of Kozy's tangible and intangible assets and the mortgagee on the property at which the restaurant operated. (Docs. 43-3, pp. 59–65; 45-1, p. 2). It was in Mr. Kinard's financial interest to become involved in Kozy's day-to-day operations, and the record

11

indicates that he did so. The fact finder ultimately may determine that Mr. Kinard's level of involvement in Kozy's operations was insufficient to support a determination that he was the plaintiffs' employer under the FLSA, but the Court declines at this juncture to conclude as a matter of law that he was not.[6]

### 2. State law claims

The plaintiffs assert the following claims against Mr. Kinard under Alabama law: breach of contract, work and labor done, promissory fraud, negligence/wantonness, and unjust enrichment. (Doc. 6, pp. 7–13). The FLSA preempts these claims.

"Where a state law claim depends on the finding of a violation of the FLSA and requires the same proof as is required to prove a violation of the FLSA, and the state law claim is only invoked to expand a plaintiff's remedies, the state law claim is preempted by the FLSA." *Johnson v. WellPoint, Inc.*, 2009 WL 8753325, at *22 (N.D. Ga. March 30, 2009) (citing *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 191 (4th Cir. 2007)). "As a matter of law, [a] plaintiff cannot circumvent the exclusive remedy prescribed by [the FLSA] by asserting equivalent state law claims in addition to the FLSA claim." *Tombrello v. USX Corp.*, 763 F. Supp. 541, 545

---

[6] The plaintiffs assert that Mr. Kinard violated the FLSA willfully. (Doc. 6, p. 7). Because the Court cannot determine whether Mr. Kinard willfully violated the FLSA without first determining whether Mr. Kinard violated the FLSA, the Court does not address the issue of willfulness at this juncture. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1324 (11th Cir. 2007) (explaining that the determination of whether a defendant's violation of the FLSA was willful "must be reserved until it is determined whether a violation of the FLSA occurred").

12

(N.D. Ala. 1991) (finding plaintiff's work and labor done claim to be preempted by the FLSA); *see also Alexander v. Vesta Ins. Group, Inc.*, 147 F. Supp. 2d. 1223, 1240–41 (N.D. Ala. 2001) (finding plaintiffs' fraud claim to be preempted by the FLSA); *Bule v. Garda CL Southeast, Inc.*, 2014 WL 3501546, at *2 (S.D. Fla. July 14, 2014) (finding plaintiff's breach of implied agreement and unjust enrichment claims to be preempted by the FLSA).

Because each of the plaintiffs' state law claims is premised on Mr. Kinard's alleged failure to compensate the plaintiffs for their work at Kozy's—a requirement imposed by the FLSA—the FLSA preempts the plaintiffs' state law claims.[7]  *See* 29 U.S.C. § 206(a); *see also Bule*, 2014 WL 3501546, at *2 ("[T]he FLSA provides the exclusive remedy for violation of its mandates.") (internal citation and quotation marks omitted).  Accordingly, Mr. Kinard is entitled to judgment as a matter of law on the plaintiffs' state law claims.

## IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Mr. Kinard's motion for summary judgment.  (Doc. 43).  The Court

---

[7] To the extent that the plaintiffs assert that Mr. Kinard negligently or wantonly failed to compensate them, the FLSA preempts the plaintiffs' claim.  *See* p. 12, *supra*; (Doc. 45, p. 18).  To the extent that the plaintiffs assert that Mr. Kinard was negligent in failing to timely disclose information regarding the financial condition of Kozy's and in failing to timely foreclose on his mortgage, the FLSA does not preempt the plaintiffs' claims.  (Doc. 6, ¶¶ 52–53, 55; Doc. 43-1, pp. 13–14).  Nevertheless, Mr. Kinard is entitled to judgment as a matter of law on those claims because he owed the plaintiffs no duty regarding the disclosure of Kozy's financial information or the timing of his foreclosure.

**DISMISSES WITH PREJUDICE** the plaintiffs' state law claims.  The plaintiffs' FLSA claim will proceed to trial, and the Court will set that claim for a jury trial. The Court will provide the parties with additional instructions in a forthcoming pre-trial order.

**DONE** and **ORDERED** this January 5, 2017.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE